# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE HARPER, | ) | |
| | ) | Case No. 14-CV-04879 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Judge Joan B. Gottschall |
| | ) | |
| | ) | |
| WEXFORD HEALTH SOURCES INC., | ) | |
| IMHOTEP CARTER, SALEH OBAISI, | ) | |
| DR. DAVIS, AND DONALD | ) | |
| STOLWORTHY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

Plaintiff Willie Harper ("Harper"), presently in custody at Stateville Correctional Center

("Stateville"), brings this civil rights action pursuant to 42 U.S.C. § 1983. In his complaint,

Harper alleges that he has been subjected to unconstitutional conditions of confinement at

Stateville because he has been unable to obtain adequate medical care for his various ailments.

Harper names as defendants Wexford Health Sources, Inc. ("Wexford"), the health care provider

for the Illinois Department of Corrections (IDOC); Imhotep Carter ("Carter"), the former

medical director at Stateville; Saleh Obaisi ("Obaisi"), the current medical director of Stateville;

and Donald Stolworthy ("Stolworthy"), the current director of IDOC.

Defendants Wexford, Obaisi, and Stolworthy individually moved to dismiss Harper's

First Amended Complaint ("FAC"). This court denied their motions to dismiss in an order filed

March 17, 2016. ("*Harper I*") (Memorandum Opinion & Order, Dkt. 88.) After their motions to

dismiss Harper's FAC were denied, Harper filed his Second Amended Complaint ("SAC").

Wexford has filed a motion to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6).

For the reasons discussed below, Wexford's motion to dismiss is denied.

## I. FACTS

The court draws the following facts from Harper's SAC and accepts them as true for purposes of the motion to dismiss. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). From as early as 2006, and while an inmate, Harper has suffered from a variety of gastrointestinal ailments causing acute pain and distress, including diverticulitis, a hiatal hernia, and twisted bowel. (SAC ¶ 11, Dkt. 101.) Additionally, Harper was diagnosed with deep vein thrombosis in April 2013. (*Id.* ¶ 13.) While in custody, Harper sought treatment for his pain and distress from Wexford and Obaisi. (*Id.* ¶ 15.) He alleges that they responded with "wholly inadequate measures like aspirin or Tylenol for the stomach pain, or a compression stocking for the leg pain." (*Id.* ¶ 18.) In 2011 and 2013 when Harper received a recommended course of treatment from physicians in the gastrointestinal unit at the University of Illinois at Chicago Hospital ("UIC Hospital"), Obaisi disregarded and failed to implement the recommended course of treatment. (*Id.* ¶ 24.) Additionally, in 2013, UIC Hospital wanted Harper to be returned and readmitted within three weeks to treat his acute pain and suffering, but Obaisi failed to have Harper returned and readmitted, and there was no follow up visit until 2015. (*Id.* ¶¶ 25–26.) In 2015, after Harper repeatedly complained of his acute pain and suffering, Wexford, and its co-defendants, allowed him to return to UIC Hospital where he received appropriate treatment for his pain. (*Id.* ¶¶ 27–29.) Throughout his incarceration, Harper has repeatedly filed grievances about his inability to receive adequate treatment or medical help for his pain and suffering, but all have been denied. (*Id.* ¶¶ 37–39, 42–43.)

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). Its factual allegations must "raise a right to relief above the speculative level." *Id.* at 555-56; *see also Swanson v. Citibank*, *N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). Plaintiffs need not meet a heightened pleading standard for § 1983 claims to survive a motion to dismiss. *See Heyde v. Pittenger*, 633 F.3d 512, 516 (7th Cir. 2011). For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, but "conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption," *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011), *as amended* (Jan. 3, 2012).

## III. DISCUSSION

Although not explicitly stated as such, Harper's SAC against Wexford alleges a claim pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Harper's SAC differs from his FAC by providing additional allegations. (SAC ¶¶ 31-43, dkt. 101.) In its brief, which accompanies its motion to dismiss Harper's SAC, Wexford raises no arguments that were not addressed in *Harper I*. (Dkt. 88.) However, in its reply brief ("Reply"), Wexford raises—for the first time—arguments based on what it calls "Northern District precedent" decided after *Harper*

*I*. (Reply 2, dkt. 122.) Because Harper's FAC survived Wexford's motion to dismiss while alleging fewer facts than his SAC, the court need not reexamine that which it has already decided. *See, e.g.*, *Universal Guar. Life Ins. Co. v. Coughlin*, 481 F.3d 458, 462 (7th Cir. 2007) (holding where a court actually decided the issue in question, law of the case applies). Therefore, the court will consider only the content of Wexford's reply.

There are two questions presented by Wexford's reply. First, whether the cases cited establish precedent that would warrant a reexamination of the court's March 17, 2016 decision denying Wexford's motion to dismiss. And second, whether Wexford has waived its arguments raised for the first time in its reply by failing to raise them in its initial memorandum supporting its motion to dismiss.

## A.  Northern District Precedent

Wexford's reply asserts that Harper's claim must be dismissed based on "Northern District *precedent*." (Reply 2) (emphasis added.) But no such rule exists. The Seventh Circuit holds "a district court decision does not have stare decisis effect; it is not a precedent." *Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 457 (7th Cir. 2005). The district court rulings cited in Wexford's reply provide persuasive authority, not precedent.

Wexford's reply claims the following three cases establish precedent that renders Harper's claim insufficient "to survive [its] motion to dismiss." (Reply 2.) In the first case Wexford cites, *Arita*, plaintiff Arita, an inmate, alleged Wexford violated his constitutional rights pursuant to § 1983 and *Monell* by failing to treat his inguinal hernia. *Arita v. Wexford Health Sources, Inc.*, No. 15-cv-01173, 2016 U.S. Dist. Lexis 150106, at *2 (N.D. Ill. Oct. 31, 2016). He further alleged that Wexford maintained a policy of "ignoring inmates' medical needs." The court determined that Arita's "single conclusory allegation that Wexford has a policy of treating

4

other inmates in the same fashion as he has been treated [was] insufficient to survive a motion to dismiss." *Id.* at \*8 (citing *Taylor v. Wexford Health Sources, Inc.*, No. 15-cv-05190, 2016 U.S. Dist. Lexis 76341, at \*4 (N.D. Ill. June 13, 2016)) (other citations omitted). The court granted Wexford's motion to dismiss for two reasons. First, Arita failed to assert specific facts to bolster his claim that other inmates received treatment similar to Arita's. And second, Arita failed to assert what specific policy might lead to "the systematic disregard of inmates' medical needs." *Id.* at \*10 (citation omitted). The case at bar, however, is distinguishable from *Arita*.

Here, Harper has alleged a specific policy—cost-cutting. (SAC ¶ 45, dkt. 101.) Harper alleges Wexford's policy of cost-cutting has prevented him from receiving "adequate and timely medical treatment, in willful indifference or disregard to [his] acute pain and suffering." (*Id.* ¶ 6.) Furthermore, unlike *Arita*, where the court determined that plaintiff's complaint failed to suggest that his experience was something other than a random event, Harper alleges a series of facts that suggest his experience was not a random event or an isolated incident of delayed medical treatment. Including, among other things, repeatedly seeking relief from severe pain and being denied (*id.* ¶ 15, 17); being prescribed a course of treatment by specialist physicians at UIC Hospital and having that course of treatment ignored (*id.* ¶ 23–24); and failing to be taken for follow-up appointments with specialist physicians (*id.* ¶ 26). What is more, *Arita* cites *Harper I* as being consistent with its decision, as Harper alleged a specific policy. 2016 U.S. Dist. Lexis 150106, at \*10.

Next, Wexford points to a case where the court granted its motion to dismiss when the plaintiff, Peacock, an inmate at Stateville, alleged that he received inadequate care because of a Wexford policy that required staff to disregard or not offer expensive medical care. *Peacock v. Rigsby*, No. 15 C 1884, 2016 U.S. Dist. LEXIS 46994, at \*7 (N.D. Ill. Apr. 7, 2016). Peacock

severed two toes in a lawnmower accident while mowing the grass at Stateville. *Id.* at *3. He

alleged that Wexford, and its employees, failed to treat properly the wound, causing it to become

infected. Peacock pointed to Wexford's failure to bandage properly his wound and administer an

adequate antibiotic regimen to plead the existence of its cost-cutting policy. *Id.* at *8. The court

determined, however, that Peacock failed to allege that "the cost of bandages and antibiotics is a

significant percentage of Wexford's budget such that a cost-cutting policy would have entailed

restricting provision of bandages and antibiotics." *Id.*

*Peacock* is distinguishable from the case at bar on several grounds. First, one may infer

the medical treatment that Wexford allegedly withheld from Harper was much more expensive

and involved than bandages and antibiotics. (*See* SAC ¶¶ 21–22, 25, 34, dkt. 101.) Moreover,

Harper's alleged facts detail medical treatment far more expansive than bandages and antibiotics

including his receiving a recommended course of treatment from specialists at UIC Hospital's

gastrointestinal unit. (*Id.* ¶ 21.) Finally, the court in *Peacock* explicitly distinguished *Harper I*.

2016 U.S. Dist. LEXIS 46994, at *9. It points out that courts in this district have denied motions

to dismiss when plaintiffs have alleged "deprivation of more expensive treatment . . . or included

additional facts that made the plaintiffs' claims plausible." *Id.* Despite the fact that *Peacock*

explicitly distinguishes *Harper I*, Wexford's reply conspicuously omits this crucial detail.

Lastly, Wexford cites *Taylor* where the plaintiff-inmate, Taylor, alleged he was denied

adequate medical treatment. *Taylor v. Wexford Health Sources, Inc.*, No 15 c 5190, 2016 U.S.

Dist. Lexis 7634, at *1 (N.D. Ill. June 13, 2016). He further alleged another inmate beat him

unconscious while Taylor was handcuffed. *Taylor*, 2016 U.S. Dist. Lexis 7634, at *5-6. Taylor

claimed that Wexford failed to both treat him in a timely manner and, when he was finally

treated, treat all of his injuries. In pleading his *Monell* claim, rather than point to a specific policy

6

that led to his alleged mistreatment, Taylor provided the court "a laundry list of ten alleged policies maintained by Wexford." *Id.* at \*13. The court held that Taylor's alleged facts, coupled with his laundry list of policies, failed to plead a *Monell* claim. *Id.* (citations omitted).

Here, rather than list a number of potential policies, as was the case in *Taylor*, Harper alleges a specific policy: cost-cutting. Harper doesn't throw a number of theories against the wall in an effort to see what sticks; rather, he couples his particular, detailed facts with a specific articulation of Wexford's alleged policy.

The cases cited in Wexford's reply are easily distinguishable from the case at bar. It is clear that these cases apply the law to three sets of allegations distinguishable from those in the present case.

## B. Argument Waiver

As a general rule, the Seventh Circuit holds that "[a]rguments made for the first time in a reply brief are waived." *United States v. Adamson*, 441 F.3d 513, 521 n.2 (7th Cir. 2006). This principle applies to district courts as well. *See, e.g.*, *Moorehead v. Deutsche Bank AG*, No. 11 C 106, 2011 WL 4496221, at \*5 (N.D. Ill. Sept. 26, 2011). This policy is in place primarily because "the opposing party does not have a chance to respond to such arguments." *Id.* The court may assuage this policy concern by allowing the opposing party to address the replying party's new arguments in a surreply. *Id.* Courts in this district have denied motions to file surreply briefs when "the movant has had the opportunity to thoroughly brief the issues" and when each "brief in the sequence on the motion fairly respond[s] to the arguments in the brief that preced[es] it." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 857 (N.D. Ill. 2015) (quoting *Univ. Healthsystem Consortium v. UnitedHealth Grp., Inc.*, 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014)

and *Franek v. Walmart Stores, Inc.*, Nos. 08–cv–0058, 08–cv–1313, 2009 WL 674269, at *19 n.14 (N.D. Ill. Mar. 13, 2009) (internal quotation marks omitted)).

Here, Wexford waited until its reply to raise the contention that cases decided in this district since March 2016 establish precedent that requires this court to grant its motion to dismiss. Because Harper has not had the opportunity to address the new arguments raised in Wexford's reply, Wexford has waived them. The court may exercise its discretion and remedy the waiver by providing leave for Harper to submit a surreply; however, the court will not do so.

As discussed above, the cases cited in Wexford's reply do not establish new precedent that would require this court to grant its motion to dismiss. And because there is no new precedent, the court need not allow further briefing.

## IV. CONCLUSION

For the foregoing reasons, Wexford's motion to dismiss (dkt. 103) Harper's Second Amended Complaint is denied.

Date:   June 21, 2017                          /s/
                                        Joan B. Gottschall
                                        United States District Judge