**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

WILLIE HARPER,

Plaintiff,

v.

SALEH OBAISI, *et al.*,

Defendants.

Case No. 14-cv-4879

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Willie Harper, an inmate, brings this suit pursuant to 42 U.S.C. § 1983 alleging that Stateville medical provider, Wexford Health Sources, Inc. ("Wexford') and Wexford doctor Dr. Obaisi (collectively the "Wexford Defendants"), and the Director of Illinois Department of Corrections ("IDOC") John Baldwin violated his Eighth and Fourteenth Amendment rights because they were deliberately indifferent to pain he is suffering related to his knee and hips.[1] Harper has moved for a preliminary injunction (Dkt. 337). He requests that the Court (1) direct the Defendants to transfer him to the IDOC facility in Dixon, Illinois, in order for Harper to receive an evaluation of his need for labral tear surgery by a specialist in such surgery at the University of Illinois Hospital at Chicago ("UIC") or other similar hospital, and (2) prohibit Defendants from baring or interfering with such an evaluation by such a specialist. Defendants oppose the motion.

[1] Ghaliah Obaisi was substituted in place of Saleh Obaisi as Independent Executor of the Estate of Saleh Obaisi (*see* Dkt. 185).

For the reasons explained below, Plaintiff's motion for preliminary injunction [337] is denied.

**STANDARD**

"A preliminary injunction is an extraordinary remedy." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). *See also Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020). The party seeking a preliminary injunction must make an initial threshold showing that: (1) it has some likelihood of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; and (3) traditional legal remedies would be inadequate. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079 (7th Cir. 2008). *See also Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). Demonstrating a likelihood of success is "a significant burden," though "at such a preliminary stage, the applicant need not show that it definitely will win the case." *Id*. at 763. "A 'strong' showing…normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. If the moving party fails to demonstrate "any one of the[] three threshold requirements, [the court] must deny the injunction." *Girl Scouts of Manitou,* 549 F.3d at 1086 (citation omitted).

If the moving party makes the initial showing, the court then balances the irreparable harm that the moving party would endure without a preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief. *Id. See also GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019), cert. denied sub nom. 140 S. Ct. 268

(2019) (internal citations and quotations omitted). Finally, the court asks "whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). "Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted." *Id.* (citation omitted). Further, under the Prison Litigation Reform Act (PLRA), injunctive relief must be "narrowly drawn, extend no further than necessary to remedy the constitutional violation, and must use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (cleaned up).

## BACKGROUND

In his one-count fourth amended complaint [230], Harper alleges that he has acute pain in his knee and hips and Defendants have denied him referral to an outside physician for treatment. Harper contends that Defendants did not take appropriate action or have appropriate policies to ensure that he (1) is sent out to a treating specialist on a reasonable and timely basis, and (2) follows the prescribed treatment and follow up procedures. In seeking preliminary injunctive relief, Harper argues that he has been in continuous pain and suffering for six years because of the labral tear in his hip. He says that he is not seeking an order to conduct the surgery; rather he is asking to be transferred to a prison where he can obtain an appropriate evaluation. If he is transferred to the Dixon facility, Harper believes he can be evaluated at UIC where there are physicians capable of repairing his hip labral tear.

Baldwin filed a response to the preliminary injunction motion [346] as did the Wexford Defendants [344].

**ANALYSIS**

The Eighth Amendment requires prison officials to provide healthcare to incarcerated inmates who cannot obtain healthcare on their own, *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021), and imposes liability on those who act with deliberate indifference to a substantial risk of serious harm to inmates, *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021). A plaintiff alleging deliberate indifference must show: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. *See id.* at 694. As here, where defendants "do not dispute that [plaintiff's] [] condition was serious, [] we ask whether the evidence suggests that they consciously disregarded his condition." *Hubbard, v. Mitcheff et al*, No. 22-1578, 2022 WL 17369687, at *2 (7th Cir. Dec. 2, 2022). The Eighth Amendment protects inmates from "grossly inadequate medical care." *Woods v. Obaisi,* No. 21-1659, 2022 WL 2113080, at *2 (7th Cir. June 13, 2022) (cleaned up).

In assessing the merits of a preliminary injunction motion, the court "do[es] not accept [plaintiff's] allegations as true, nor do we give him the benefit of all reasonable inferences in his favor," and it does not give plaintiff "the benefit of conflicting evidence, as we would in reviewing a grant of summary judgment." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). In light of these standards and considering the record in support of and in response to the motion for preliminary injunction, the

Court finds that Harper has not met his burden to show a likelihood of success on his claim of deliberate indifference in order to warrant preliminary injunctive relief.

**A. Wexford Defendants**

Medical professionals generally have discretion in treatment decisions so a plaintiff must establish that the medical professional's acts are "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (cleaned up). Showing deliberate indifference poses a "high hurdle" for a plaintiff. *Id.* (internal quotation marks omitted). A plaintiff must show that a defendant "was aware of, and disregarded, a substantial risk of harm." *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016).

Harper argues that on July 28, 2022 he was seen by Dr. Peter Mulhern, a specialist in orthopedics, and Dr. Mulhern "recommended the very surgery"—left hip arthroscopy—which "Wexford has opposed." (Dkt. 340 at 2-3). Dr. Mulhern's notes stated: "I think [Harper] needs an arthroscopy of his left hip" and it is reasonable to "continue use of other treatment and the support of a cane but ideally he needs to have the left hip arthroscopy performed." (Dkt. 340-2). In response, the Wexford Defendants argue that Dr. Mulhern's declaration relies on an old MRI from 2016 and does not address the more recent January 2020 MRI. They contend that Dr. Mulhern's declaration does not amount to a recommendation for surgery. Further, the Wexford Defendants argue, a number of orthopedic physicians have seen Harper,

including Dr. Yassir Farid, Dr. James Davis, Dr. Robert Bane, Dr. Alan Froehling, but none of them recommended arthroscopic repair of Harper's left hip. The Wexford Defendants also point out that in March 2021, Harper was evaluated by orthopedic surgeon Dr. Jeffrey Whiting and his PA Allison Modglin at Saint Louis University Hospital, and the next month, PA Modglin told Harper's correctional facility that they "do not recommend surgery as labral repair will not be successful." (Dkt. 344 at 11). Harper argues that he did not actually see Dr. Whiting and that PA Modglin noted that the 2020 MRI was not done with an arthrogram. However, Harper does not dispute that Modglin told his correctional facility that they "do not recommend surgery as labral repair will not be successful."[2]

In addition, the Wexford Defendants have provided the expert report of Dr. Mark Hutchinson. Dr. Hutchinson is a board-certified and practicing orthopedic surgeon and director of orthopaedic medicine at UIC. Dr. Hutchinson reviewed Harper's medical records as well as the depositions of Harper, Dr. Farid, Dr. Davis, and Dr. Bane. Dr. Hutchinson opines that for Harper, "a non-surgical approach is preferred and recommendation for surgical repair would be medically inappropriate." (Dkt. 345-1 (Hutchinson Decl.) ¶ 30). His medical opinion is that "Mr. Harper's condition

[2] In his reply brief, Harper argues that "every physician in this case who has treated Plaintiff for hip pain has recommended either surgery or that he be examined by a specialist." He cites to his own declaration at Exhibit A. He also attaches a report he says is from Dr. Davis, stating Harper would "benefit from referral to an orthopedic surgeon who does hip arthroscopy." (Dkt. 351-5 at 2). Other doctors' notes do not reflect a clear referral for surgery. For example, Dr. Farid's July 2016 note stated he would "like to order an MRI and have him follow up with Dr. Matthew Marcus." (Dkt. 345-1 at 18). In any event, to the extent that there is some conflict amongst the various doctors' recommendations, at this stage the Court does not give Harper "the benefit of conflicting evidence." *See Doe*, 43 F.4th at 791.

continues to not indicate a need for anthroscopic repair of the left hip and there is no need for a referral for an evaluation at UIC for this procedure." *Id.* ¶ 49. He opines that the risks of this procedure outweigh any benefits. *Id.* The Wexford Defendants argue that Dr. Hutchinson's review of the MRI images of Harper's left hip from January 21, 2020 do not definitively indicate a labral tear. Indeed the January 2020 MRI note states, "…there is no detached labral tear." (Dkt. 345-1 at 42). Dr. Hutchinson also states that based on his first-hand knowledge, "there are no orthopedic surgeons currently at UIC that perform anthroscopic repairs of the hip." *Id.* ¶ 50. Harper does not dispute this representation but suggests that a "casual online search shows that there are several doctors who work in the Chicago area" who could do the surgery. (Dkt. 351 at 6).

Harper takes issue with Dr. Hutchinson's focus on his 2020 MRI, arguing that quality of that MRI was not as good as the 2016 MRI. But Dr. Hutchinson's detailed 16-page report shows he reviewed and considered Harper's 2016 medical records. He reviewed the medical records along with deposition transcripts of Harper's doctors to reach an opinion about Harper's condition and the need for the requested surgery.

Harper does not dispute that he has seen multiple orthopedic doctors and has received treatment for his hip, including NSAIDs (non-steroidal anti-inflammatory drugs), activity modification, and physical therapy. Harper may be right that the Wexford Defendants could have done things differently. But "[n]egligence—even gross negligence—is insufficient to meet this standard." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). The Eighth Amendment "does not entitle inmates to

particular care of their choosing." *Woods*, 2022 WL 2113080, at *2. Harper has not shown that the Wexford Defendants' conduct rises to the level of "grossly inadequate medical care." *Id*. Dr. Hutchinson's exhaustive expert report along with the medical records undermine Harper's position that the preliminary relief he requests is warranted.

Harper relies on *Foster v. Ghosh,* 4 F. Supp. 3d 974 (N.D. Ill. 2013), where the court granted a motion for preliminary injunction to an inmate who suffered from cataracts. Unlike here, however, the defendants in *Foster* did not provide an expert report that evaluated the plaintiff's medical records and formed a medical opinion about the need for surgery. And the plaintiff in *Foster* did not request a prison transfer. Moreover, the court there also stated that for cataracts, "the *only* treatment is surgical removal." 4 F. Supp. 3d at 980 (emphasis added). Harper does not argue that the only treatment for his condition is surgery.

In addition, Wexford argues that Harper fails to point to any policy, procedure, or practice that caused his alleged constitutional deprivation. Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), Wexford faces liability under section 1983 only for constitutional injuries caused by "(1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority." *Howell*, 987 F.3d at 653; *see also Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Harper fails to address this argument so any response for the purposes of this motion is waived. *See Bonte v. U.S. Bank N.A.,* 624 F.3d 461, 466

(7th Cir. 2010); *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the district court is not required to research and construct legal arguments for parties); *Horne v. Elec. Eel Mfg. Co., Inc.*, 987 F.3d 704, 727 (7th Cir. 2021) ("courts generally do not craft new arguments for a party, especially in civil cases and especially when the party is represented by counsel").

Therefore, Harper has not shown a likelihood of success on his claim that the Wexford Defendants are liable for violating his constitutional rights.

**B. Baldwin**

Baldwin argues that he is not a medical provider and is not responsible for administering Harper's medical treatment or making any decisions with regard to medical judgment. To be liable for an alleged deprivation of constitutional rights, a defendant must be "personally responsible" for the deprivation. *Mitchell v. Kallas,* 895 F.3d 492, 498 (7th Cir. 2018). There is no supervisory liability so a plaintiff "must present evidence that the defendants violated the Constitution through their own conduct." *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 619 (7th Cir. 2022).

Harper fails to respond to Baldwin's argument about his lack of involvement in the alleged constitutional violation, again waiving a response to this argument. *See Bonte,* 624 F.3d at 466; *Horne*, 987 F.3d at 727. Accordingly Harper has not shown a likelihood of success on his claim against Baldwin.

**C. Harper has not shown that preliminary relief is warranted**

Defendants additionally point out that injunctive relief here would require them to perform an affirmative act. Because a mandatory injunction requires the court to

command the defendant to take a particular action, it is "cautiously viewed and sparingly issued." *Knox v. Shearing*, 637 F. App'x 226, 228 (7th Cir. 2016) (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997)). Harper does not address argument.

Given a plaintiff's burden under the preliminary injunction standard as well as under the PLRA and for mandatory injunction, Harper has not shown that he is likely to succeed on his claim.[3] The Court's ruling herein of course is not determinative of summary judgment and does not impact the merits of any party's arguments on summary judgment. *See Doe*, 43 F.4th at 791; *Imaging Business Machines, LLC v. BancTec, Inc.*, 459 F.3d 1186, 1192 (11th Cir. 2006).

**CONCLUSION**

For the stated reasons, Plaintiff's motion for preliminary injunction [337] is denied.

E N T E R:

Dated: December 9, 2022

MARY M. ROWLAND
United States District Judge

[3] Because the Court finds that Harper has not shown a likelihood of success, it need to address the other elements for a preliminary injunction. *See Doe*, 43 F.4th at 791 (the first step of the preliminary injunction analysis "is often decisive.") (citation and quotation marks omitted).