IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIE HARPER, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SOURCES, INC. et al, <br><br> Defendants. | Case No. 14-cv-04879 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Willie Harper, who was incarcerated at Stateville Correctional Center ("Stateville"), filed this lawsuit in 2014 pursuant to 42 U.S.C. § 1983, alleging that Stateville medical provider, Wexford Health Sources, Inc. and Wexford doctor Dr. Saleh Obaisi and the Director of IDOC Rob Jeffreys were deliberately indifferent to his medical conditions. All of the defendants moved for summary judgment. For the reasons stated below, Jeffreys' summary judgment motion [334] is granted, Dr. Obaisi's motion [330] is granted, and Wexford's motion [326] is granted.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are

1

material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

## BACKGROUND[1]

Plaintiff Willie Harper has been an inmate of the Illinois Department of Corrections ("IDOC") since 2002 and was incarcerated at Stateville between 2007 until November 4, 2016. WSOF ¶ 1. In November 2016, he was transferred to Lawrence Correctional Center ("Lawrence"). *Id*. Defendant Rob Jeffreys ("Jeffreys")

---

[1] The facts are taken from the parties' Rule 56.1 statements and are undisputed unless otherwise noted. "WSOF" is Wexford's statement of facts; "JSOF" is Jeffreys' statement of facts; and "OSOF" is Obaisi's statement of facts.

2

is the current Director of IDOC (previously it was John Baldwin). JSOF ¶ 2; FAC ¶ 5. Harper sues Jeffreys in his official capacity only. JSOF ¶¶ 2, 7. Jeffreys is not a medical professional, has no personal involvement in delivering medical treatment to IDOC inmates, and Harper never directly contacted Jeffreys. *Id*. ¶¶ 10, 11.[2] Defendant Saleh Obaisi, M.D. ("Dr. Obaisi") served as the Medical Director at Stateville from August 2012 until he passed away on December 23, 2017.[3] OSOF ¶ 2.

Dr. Robert Carroll, a board-certified internist and gastroenterologist who has been on the faculty at the UIC Medical Center's Department of Digestive Disease and Hepatology since 1999, examined Harper on May 3, 2011. *Id*. ¶ 5. The exam was for chronic abdominal pain, and Dr. Carroll performed a colonoscopy related to Harper's complaints of constipation. *Id.*[4] After performing Harper's colonoscopy, Dr. Carroll formed the impression that diverticula (small bulges) were found in part of Harper's colon, and the rest of his colon and rectum appeared normal. *Id*. ¶ 6. Dr. Carroll's findings were of a hiatal hernia and normal esophagus. *Id*. Anna Mellgren, a nurse practitioner at UIC, testified that for a patient with a hiatal hernia even managed appropriately, symptoms can increase or decrease from time to time. *Id*. ¶ 7. On

---

[2] The Court deems JSOF ¶ 10 admitted. Harper's response does not specify which portion of the fact is disputed and without citation to any evidence. A district court can strictly enforce the local rule "by accepting the movant's version of facts as undisputed if the non-movant has failed to respond in the form required." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014).

[3] Ghaliah Obaisi was substituted in place of Saleh Obaisi as Independent Executor of the Estate of Saleh Obaisi (*see* Dkt. 185).

[4] OSOF ¶ 5 is deemed admitted. Harper responds that the fact is "Admitted in part," without specifying the dispute and his response does not appear to contradict the asserted fact.

February 28, 2013, Dr. Obaisi submitted a referral for Harper to receive a CT scan of his abdomen and pelvis. *Id.* ¶ 10. Dr. Kelly Roberts at UIC Medical Center reviewed and interpreted the CT scan; it was unremarkable. *Id.* ¶ 11. On July 9, 2013, Dr. Obaisi in collegial review referred Harper to a GI specialist. *Id.* ¶ 12. This referral by Dr. Obaisi was not approved and Dr. Obaisi agreed to represent upon completion of the alternative medical plan. *Id.* ¶ 15. The alternative care recommended was acid reducer and antispasmodic medication and to continue treatment at Stateville. *Id.* Also in July 2013, Dr. Obaisi issued a Medical Permit for Harper to receive compression garment stockings. *Id.* ¶ 53. In January 2015, Dr. Obaisi submitted a referral request for Harper to see a GI at UIC, due to Harper's persistent abdominal discomfort. *Id.* ¶ 19.

In July 2016, Dr. Farid saw Harper at UIC Medical Center and did not provide any treatment for Harper's left knee for the bone infarct and provided no recommendations as to treatment for his left knee bone infarct. *Id.* ¶ 58. Also at that time Dr. Farid found that Harper's clinical examination and x-rays did not warrant total hip arthroplasty or hip replacement. *Id.* ¶ 61. Later, in May 2021, Dr. James Davis performed Harper's diagnostic arthroscopy and surgery, and noted that the bone infarct/enchondroma did not require surgical intervention. *Id.* ¶ 59.

Wexford is a company that provides medical services to inmates in IDOC custody pursuant to its contract with the IDOC. WSOF ¶ 2. On February 5, 2020, Wexford approved a left knee arthroscopy for Harper's left knee medial meniscal tear. *Id.* ¶ 57. In October 2020, a new Medical Special Services Referral was generated for a new

orthopedic consult. *Id.* Later, on May 11, 2021, Dr. Davis performed arthroscopic repair of Harper's left medial meniscus. *Id.* ¶ 59. Harper admits the "surgery was successful." [364 ¶ 60].

In his one-count Fourth Amended Complaint (FAC) [230], Harper alleges that Defendants violated his Eighth Amendment rights by failing to send him to a treating specialist on a reasonable and timely basis and failing to ensure he follows prescribed treatment and follow up procedures. As a result, he suffers acute pain and suffering in his left knee and right and left hips and suffers from gastrointestinal issues.

## ANALYSIS

### I. Local Rule 56.1

District courts have broad discretion to enforce the local rules governing summary judgment motions, *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014), and the Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (quotation omitted). Federal Rule 56(c)(3) also requires parties to cite to "particular parts of materials in the record" when arguing that genuine factual disputes exist. *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022). This Court agrees with Defendants that Harper did not fully comply with Local Rule 56.1, and evaluates particular facts and responses as they are pertinent to the analysis. *See, e.g., Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1020 (N.D. Ill. 2018).

5

## II. The Eighth Amendment

The Eighth Amendment requires prison officials to provide healthcare to incarcerated inmates who cannot obtain healthcare on their own, *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021), and imposes liability on those who act with deliberate indifference to a substantial risk of serious harm to inmates, *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021). A plaintiff alleging deliberate indifference must show: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. *See id*. Here, Defendants do not dispute that Harper's medical conditions were objectively serious.

The second prong, the only one in dispute, is subjective, requiring a plaintiff to provide evidence that each defendant acted "with a 'sufficiently culpable state of mind.'" *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To establish deliberate indifference, a plaintiff must show that the defendant '*actually* knew of and disregarded a substantial risk of harm.'" *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc)). Though a plaintiff need not show intentional harm, "[n]egligence—even gross negligence—is insufficient to meet this standard." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Showing deliberate indifference poses a "high hurdle" for a plaintiff. *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotation marks omitted).

## III. Defendant Jeffreys

IDOC defendant Jeffreys argues he cannot be sued under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) and also argues that Harper failed to show any constitutional deprivation as the result of any IDOC policy.

First, there is no evidence of Jeffreys' personal involvement in this case, which would require that the alleged constitutional violation occurred at the defendant's "direction or with [his] knowledge or consent." *Mitchell*, 895 F.3d at 498. However Harper argues that by transferring him to Lawrence in 2016, Jeffreys "blocked and made impossible Plaintiff's access to treatment by Dr. Matthew Marcus or any other UIC doctor who could have conducted the [hip] surgery." [369 at 1]. Jeffreys is correct that the Eleventh Amendment bars private suits in federal court against a state for monetary damages. *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 336 (7th Cir. 2000). This immunity extends to state agencies and to state employees acting in their official capacities. *Id.* at 336–37 (discussing *Ex Parte Young*, 209 U.S. 123 (1908)). An exception applies, though, where a state official is sued in their official capacity for an ongoing violation of federal law if the requested remedy is prospective or declaratory relief. *Id.* at 345. Here, Harper does not seek damages, framing his claim against Jeffreys as a *Monell* claim for prospective injunctive relief only. [369] at 3–4; FAC ¶¶ 5, 52.

Still, Harper must show "(1) a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority; (2) culpability, meaning, at a minimum, deliberate conduct; and (3) causation, which means the municipal action was the 'moving force' behind the constitutional injury."

7

*Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019). Harper's *Monell* theories against Jeffreys are: (1) IDOC violated its own policy of not transferring prisoners on medical hold; (2) Jeffreys is the final policy-maker in opposing Harper's request for a transfer; and (3) the unconstitutional consequences are so patently obvious that Harper need not show a pre-existing pattern.

First, Harper does not cite any authority or explain how IDOC violating its own policy amounts to an express policy or widespread practice under *Monell. See Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019). This undeveloped and unsupported argument is therefore waived. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (conclusory and underdeveloped arguments are waived); *see also MBM Holdings LLC v. City of Glendale*, 843 F. App'x 5, 8 (7th Cir. 2021) ("It is the responsibility of the litigants to raise coherent legal claims, produce factual support, and develop reasoned arguments supported by citation to legal authority.").

Next, as to Harper's argument that Jeffreys is a final policy-maker for *Monell* purposes, Harper has not provided evidence that a deliberate act by Jeffreys deprived him of a constitutional right causing his constitutional injury. As an initial matter, Harper concedes he does not know if Jeffreys was actually involved in creating IDOC policies. JSOF ¶ 9.[5] Additionally, this Court previously denied Harper's preliminary injunctive motion seeking to be transferred to a different IDOC facility [352]. That opinion explained that injunctive relief would require defendants to perform an

---

[5] The Court deems JSOF ¶ 9 admitted because Harper's response is largely legal argument, and cites only Harper's own preliminary injunction motion and a statement in his statement of facts (PSOF ¶ 59) that does not reference Jeffreys. [370 ¶ 9].

8

affirmative act—a request that is "cautiously viewed and sparingly issued." *Knox v. Shearing*, 637 F. App'x 226, 228 (7th Cir. 2016) (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997)). Although that was a preliminary ruling, Harper has not produced evidence on summary judgment to show that he is entitled to this relief. He must show that Jeffreys' act caused his constitutional injury; he argues only that the transfer refusal "means the continuation of his pain and suffering." [369 at 4]. Harper has not "adduce[d] affirmative evidence sufficient to support a jury's verdict in [his] favor." *Berkson v. Costco Wholesale Corp.*, No. 18-CV-2598, 2021 WL 83506, at *5 (N.D. Ill. Jan. 11, 2021).

Finally, apparently relying on an alternate widespread-practice theory, Harper contends that the Court should find the unconstitutional consequences of the policy are "patently obvious." [369 at 4]. Harper does not respond to Jeffreys' argument that he has not shown a constitutional deprivation resulting from an IDOC policy. Indeed Harper does not explain what IDOC policy he means or why the unconstitutional consequences are patently obvious. Again the Court cannot construct a litigant's argument for him, and finds this argument undeveloped and unsupported. *See MBM Holdings LLC*, 843 F. App'x at 8.

Accordingly, Harper has not raised a genuine issue of material fact about Jeffreys' liability and summary judgment in favor of Jeffreys is warranted in this case.

### IV. Defendant Obaisi

Dr. Obaisi argues that he was not deliberately indifferent to Harper's medical needs, and Harper cannot recover punitive damages or seek injunctive relief from the

Estate of Dr. Obaisi. As to punitive damages and injunctive relief, Harper does not respond to this argument, waiving any response. [367].[6] *See Packer v. Trustees of Indiana Univ. Sch. of Med.*, 800 F.3d 843, 849 (7th Cir. 2015) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."); *see also G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534 (7th Cir. 2012).[7]

Dr. Obaisi next argues that no reasonable jury could find Dr. Obaisi was deliberately indifferent to Harper in violation of the Eighth Amendment. Dr. Obaisi argues that his care and treatment for Harper's conditions met the standard of care. Medical professionals generally have discretion in treatment decisions so a plaintiff must establish that the medical professional's acts are "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Donald*, 982 F.3d at 458. "The Eighth Amendment proscribes deliberate indifference to serious medical needs of prisoners amounting to the unnecessary and wanton infliction of pain." *Arce v. Wexford Health Sources Inc.*, 75 F.4th 673, 678–79 (7th Cir. 2023) (cleaned up).

---

[6] In addition in his complaint Harper sought an "[a]ward [of] compensatory and punitive damages against defendants" FAC ¶ 55. He does not pursue the claim that he is entitled to punitive damages from any defendant; any request for punitive damages is waived.

[7] The law favors Dr. Obaisi on this issue in any event. *See Taylor v. Wexford Health Sources, Inc.*, No. 16-CV-3464, 2022 WL 4329025, at *14 (N.D. Ill. Sept. 19, 2022); *Zavala v. Obaisi*, No. 17-CV-03042, 2021 WL 1172774, at *13 (N.D. Ill. Mar. 29, 2021).

Harper does not dispute that he needs "verifying medical evidence" that any delay by Dr. Obaisi, and not his underlying condition, caused him harm. *See Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002); *Flournoy v. Est. of Obaisi*, No. 17 CV 7994, 2020 WL 5593284, at *8 (N.D. Ill. Sept. 18, 2020).[8] Expert testimony that a plaintiff suffered because of a delay in treatment constitutes as verifying medical evidence. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). But evidence, such as a medical record, "of a plaintiff's diagnosis and treatment, standing alone," is "insufficient if it does not assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him." *Id*.

Dr. Obaisi provided expert opinions from Drs. Michael J. Goldberg and Mark R. Hutchinson. Gastroenterologist Dr. Golberg provided a number of opinions about Harper's care. (Goldbert Report (Dkt. 333-6; Exh. 9)) ("Golberg Rep."). Dr. Goldberg is a licensed medical doctor, board-certified in Internal Medicine and Gastroenterology, who practices medicine at Northshore University Health System. OSOF ¶ 17.[9] Among other things, Dr. Golberg opined to a reasonable degree of medical, internal medicine and gastroenterology certainty that:

- Dr. Obaisi complied with the applicable standard of care in his treatment of Mr. Harper's medical conditions since Dr. Obaisi first began treating him at Stateville until Harper's transfer to Lawrence

- Dr. Obaisi's treatment of Harper's abdominal complaints was reasonable, adequate and met the standard of care

---

[8] Harper appears to concede Dr. Obaisi's limited role in his response to Obaisi's summary judgment motion: "To be sure, [Wexford] is the party fully responsible for barring Plaintiff's return [to UIC]. Dr. Obaisi at least tried to get Wexford to send Plaintiff to UIC." [367 at 1].

[9] OSOF ¶ 17 is admitted as Harper's response is legal argument.

- Harper is not a candidate for surgical treatment or any diagnostic testing for his hiatal hernia

- After Dr. Obaisi referred Harper for a GI consult, there was no medical reason for Dr. Obaisi to appeal the denial, and also no evidence that the denial of the referral after collegial review was for any reason other than lack of medical necessity.

*Id.* For his part, Dr. Mark Hutchinson gave his opinions to a reasonable degree of medical certainty based on his education, training and experience as a physician and orthopaedic surgeon. (Hutchinson Report (Dkt. 333-11; Exh. 14)) ("Hutchinson Rep."). He opined, among other things, that:

- surgical intervention for Harper's left knee was not required as of June 2018, and there is no basis for Harper's allegation that Dr. Obaisi failed to refer him for surgery for his knee

- Dr. Obaisi and Wexford's management of the left knee met the applicable standard of care at all times

- Absent successive and sustained weight loss, which may obviate the need for total hip arthroplasty in the first place, Mr. Harper was never a surgical candidate for total hip arthroplasty

- Nothing that Wexford did or failed to do that caused or contributed to any injury or pain to Mr. Harper's bone infarct, left knee or left hip conditions

- The course of treatment prescribed to Mr. Harper…has not resulted in any permanent injury to Harper that [h]e would not have experienced otherwise

*Id.* Harper does not rebut these expert opinions with any competing expert testimony. He did not disclose his own expert to support his deliberate indifference claim. First, although Harper made objections to Dr. Hutchinson's opinions in his response to Obaisi's statement of facts, Harper does not raise any argument about Dr. Hutchinson in his response brief. [367]. As Dr. Obaisi points out, Harper expressly states that "Dr. Obaisi was willfully indifferent to Plaintiff's pain and suffering from

12

*two* objectively serious medical conditions, his abdominal pain and [Deep vein thrombosis (DVT)]." *Id*. at 3 (emphasis added). Thus the Court agrees that Harper waived his argument that Dr. Obaisi was deliberately indifferent to his orthopedic conditions. *See Packer*, 800 F.3d at 849.

As to Dr. Goldberg, Harper argues that he "has no direct personal knowledge that Dr. Obaisi was actually providing [proper care]" and "no foundation for his opinion" and is not qualified. [367 at 2, 6]. Dr. Goldberg was disclosed as an expert, and reviewed Harper's medical records and relevant documents in this case. Harper does not cite any authority that he needed to have "personal knowledge" of Harper's care. As for Dr. Carroll, the UIC gastroenterologist, Harper attempts to rely on him to rebut Dr. Golberg's testimony. However Dr. Carroll stated that his workup of Harper was fairly unremarkable, and recommended Harper continue his present medications from Dr. Obaisi and return to normal activity and a regular diet. (OSOF ¶¶ 31, 32) (Harper concedes this in large part, arguing only that he was also prescribed an anti-spasmodic to relieve his discomfort [368] ¶ 32).[10] Even if the Court viewed Dr. Golberg and Dr. Carroll as presenting different opinions about the appropriate care for Harper, medical professionals' difference of opinion does not itself establish deliberate indifference. *See Petties,* 836 F.3d at 729.

Still, Harper maintains that he did not receive enough compression stockings from Dr. Obaisi, that Dr. Obaisi did not provide all the pain medication prescribed, and

---

[10] In addition, as Dr. Obaisi argues, Harper appears to improperly rely on treating doctor Dr. Carroll as an expert when Dr. Carroll was not disclosed as such. *See e.g. Beaton v. SpeedyPC Software*, 338 F.R.D. 232, 236 (N.D. Ill. 2021).

13

did not carry out the treatment plan for his abdominal pain. To support his arguments, Harper's asserted facts contain statements that are unsupported by any evidence or rely on Harper's own declaration and no other evidence. E.g. PSOF ¶¶ 20, 21, 23, 33. Harper's own account, however, does not constitute verifying medical evidence. *See Johnson v. Obaisi*, No. 16 CV 4046, 2020 WL 433872, at *7 (N.D. Ill. Jan. 28, 2020). In addition, Harper's contention that Dr. Obaisi ignored Dr. John Quigley's treatment plan with regard to his leg swelling does not establish deliberate indifference. Harper does not dispute that he received compression stockings. Indeed Dr. Obaisi was entitled to exercise his professional judgment. *See Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008). Moreover, Harper cites little case law to support his arguments in opposition to Obaisi's motion. In *Howell*, 987 F.3d 647, cited by Harper, the court found "no evidence that Wexford personnel refused to follow the advice of a specialist." *Id*. at 660.

In short, Harper may be right that Dr. Obaisi should have done something more or different. But Harper does not raise an issue of fact that any action or inaction by Dr. Obaisi proximately caused Harper's alleged injuries. And under the Eighth Amendment, Harper is not entitled to the "particular care of [his] choosing" and did not offer evidence in this case to show Dr. Obaisi's provided "grossly inadequate medical care." *Woods v. Obaisi*, No. 21-1659, 2022 WL 2113080, at *2 (7th Cir. June 13, 2022); *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (a plaintiff must show "something approaching a total unconcern" for his health). For these reasons, summary judgment in Dr. Obaisi's favor is granted.

14

## V.     Wexford

Finally, the Court addresses Harper's Eighth Amendment claim against Wexford. Wexford argues that Harper's §1983 claim fails because Harper did not establish a constitutional deprivation, and also because he did not show he was harmed as a result of a policy or practice reflecting deliberate indifference by Wexford. [329] Harper counters that Wexford failed "to address the widespread pattern of its doctors failing to carry out treatment plans." [361].

Under *Monell*, 436 U.S. 658, Wexford faces liability under section 1983 only for constitutional injuries caused by "(1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority." *Howell*, 987 F.3d at 653; *see also Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). A plaintiff must "offer evidence of causation: that the unconstitutional custom, policy, or practice at the Jail was the 'moving force' behind the constitutional deprivation." *Daniel v. Cook Cnty.*, 833 F.3d 728, 736 (7th Cir. 2016) (cleaned up).

First, this Court has granted summary judgment to Dr. Obaisi on Harper's Eighth Amendment claim, and "there can be no *Monell* liability absent an underlying constitutional violation." *Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1151 (N.D. Ill. 2022). Nevertheless, Harper asserts that Wexford had a custom or practice of failing to refer "Plaintiff to an outside specialist for an unreasonable period of time, and (2) failure to follow the recommendations of that specialist." [361 at 10]. For support, Harper points to "four cases", which are his "four objectively serious medical

15

conditions." *Id*. at 2. Harper does not cite authority that this is a basis for a *Monell* custom and practice claim against Wexford. Harper relies heavily on *Thomas v. Martija*, 991 F.3d 763 (7th Cir. 2021), but in that case the Seventh Circuit *affirmed* summary judgment in favor of Wexford. Harper does not put forth evidence that Wexford's alleged unconstitutional practice caused him to receive constitutionally deficient medical care, and he does not meet the "exacting requirements of *Monell*." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 222 (7th Cir. 2021).

Harper has failed to offer evidence to create a jury question on his *Monell* claim in this case and so the Court grants summary judgment to Wexford.

## CONCLUSION

For the stated reasons, the Court grants Defendants' summary judgment motions: Jeffreys' motion [334], Obaisi's motion [330], and Wexford's motion [326] are granted. The Clerk shall enter judgment in favor of Defendants and against Plaintiff. Civil case terminated.

E N T E R:

Dated: September 25, 2023

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

16